722 So.2d 1081 (1998)
STATE of Louisiana
v.
Robert Leon KOONTZ, Jr.
No. 98-KA-367
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1998.
Rehearing Denied December 21, 1998.
*1083 John M. Crum, Jr., District Attorney, St. John the Baptist Parish, Edgard, Louisiana, Attorney for Plaintiff/Appellee.
Victor E. Bradley, Jr., Norco, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS C. WICKER, Jr., J.Pro Tem.
GOTHARD, Judge.
The defendant was convicted of the offense of indecent behavior with a juvenile, and the trial court sentenced him to two (2) years at hard labor and a fine of $2,500.00. The defendant appeals. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
In May of 1996, L.G. filed a complaint with the St. John the Baptist Parish Sheriff's Office, alleging her six-year-old daughter, J.J., had been sexually abused by defendant, Robert Leon Koontz. Detective Melissa Sperling took the complaint. After interviewing the child, Det. Sperling referred her to Dr. Scott Benton at Children's Hospital in New Orleans for a physical examination. In conjunction with the investigation, Sperling interviewed J.J.'s father, K.J., and also her school counselor, and another juvenile. After her investigation, Sperling arrested defendant.
At trial, L.G. testified that she and J.J. have lived in Covington for the past two years, and that she is currently separated from her second husband. On alternate weekends, J.J. visits with her father at his home in Laplace. Defendant is a friend of J.J.'s father, and J.J.'s mother was aware that her father at times took J.J. to defendant's home. Defendant lived in Laplace with his wife and his young son.
J.J.'s mother testified that on occasion, J.J. came home from Laplace complaining of vaginal irritation. She noted that the area was red and inflamed. She applied ointment to the irritated area, and the problem generally improved over the course of a few days. She asked J.J. repeatedly if anyone had been touching her. The child continually denied that anything was wrong, and she assumed the irritation was caused by the child's failure to clean herself properly when using the bathroom.
Tammy Stafford, a guidance counselor at J.J.'s school, testified that she began seeing the child in November, 1995 for behavioral problems. After some time, J.J. told Ms. Stafford that she was being sexually abused. Ms. Stafford in turn notified J.J.'s mother, who had, by that time, already learned of the situation.
J.J.'s father testified at trial that over the past three years he has had visitation with J.J. every other weekend. On these weekends he picks the child up at her mother's house and takes her to Laplace. He sometimes allowed J.J. to stay overnight with defendant and his wife, so that she could play with defendant's son. Defendant lived three blocks away from J.J.'s paternal grandmother. J.J.'s father stated that he was unaware that anything was wrong with his daughter.
Dr. Scott Benton, an expert in pediatrics and child sexual abuse, testified that he examined J.J., at which time he spoke to the child privately. She told him that a person had touched her "privates" with his hand. This person "put his fingers inside of it" and "it hurt." J.J. told the doctor that this person did not remove her clothing, but that he had put his hand inside her underwear. She stated that this had happened at the person's house, and that it had happened more than once. When asked whether the person did anything else she did not like, J.J. stated, "He showed me his private." The person took her hand and forced her to touch his "private."
Dr. Benton performed a complete physical examination of the child. He noted that she was healthy, and showed no signs of physical abuse. He performed a vaginal exam, using a colposcope (a magnifying instrument). He found a narrowing of the hymen in the posterior section, an area which causes him concern when he sees changes to it. The doctor noted that such a narrowing of the hymen is, to him, highly suspicious of blunt penetrating trauma. It was Dr. Benton's opinion that *1084 the physical examination corroborated the history J.J. gave him.
J.J. was age eight at the time of trial. After conducting a preliminary examination as to the child's competency, the court allowed her to testify. J.J. testified that while visiting her father on weekends, she often went to defendant's house. She played with defendant's son and sometimes sat on defendant's lap. J.J. stated that defendant touched her private part by putting his hand under her clothing. Defendant also forced her to place her hand on his private part, and to rub it. These incidents occurred in the son's bedroom and in the kitchen. Defendant told her to keep these incidents a secret. J.J. also stated that she was afraid of defendant. She eventually told a friend about the molestation, and the friend convinced her to tell her parents.
Defendant testified that, for the most part, he was away from the house when J.J. was there. He and J.J.'s father regularly went out together while J.J. stayed with his wife and son. He recalled more than one occasion when J.J. was at his house watching television with him and his family, and she climbed on his leg and began rubbing against him. He moved the girl away on each occasion. Defendant stated that he is currently fifty years old.
Defendant's wife also described times when she saw J.J. rubbing her private part against defendant's leg. She testified that she caught the son and J.J. lying together on several occasions, while her son kissed J.J.'s navel. She testified that J.J. had frequently complained upon her arrival at their house that her vagina was red and irritated. She put diaper rash cream on the affected area, and instructed J.J.'s father to tell his mother about the problem so that she might examine the child.

ALLEGATIONS OF ERROR
In his first allegation of error, the defendant alleges that the trial judge erred in failing to grant a mistrial after the Assistant District Attorney alluded to other crimes allegedly committed by the defendant. Defendant complains that he was prejudiced by the trial court's failure to grant a mistrial after the state questioned him on cross-examination regarding his association with another female child.
The record of this case reflects that the investigating officer conducted a recorded interview with this other child, M.F., on May 21, 1996, as part of her investigation of defendant. Prior to trial, defendant filed a motion in limine, asking that the court admonish prosecution witnesses not to refer to allegations made by M.F. in that recorded statement. The trial court granted defendant's motion in limine.
However, during the course of cross-examination, the prosecutor asked defendant whether he knew M.F. and defendant responded that she is the child of his friend. The questioning continued as follows:
Q. How old was [M.F.] when you knew her?
A. No idea, ten, twelve, thirteen years old, somewhere in that neighborhood.
Q. Okay. Did [M] ever spend the night at your house?
A. Not while I was there.
Q. Not while you were there?
A. Correct.
Q. So the whole time you were staying in Colonial Mobile Park you never recall [M.F.] spending the night in your home?
A. No.
Q. You recall her visiting at the home?
A. They, yeah, they came by from time to time.
Q. Did [M.] come by alone?
A. Not that, not when I was there.
Q. Not when you were there. And she never spent the night. Did you ever go into a room where [M.F.] was sleeping?
At that point, defense counsel objected, and after the jury was removed, requested a mistrial pursuant to LSA-C.Cr. P. art. 770. The trial court sustained defendant's objection to the state's final question, but denied the motion for mistrial. Instead, the court admonished the jury to disregard the line of questioning concerning the child.
*1085 In this appeal, defendant argues that the state's questioning was aimed at portraying him as a bad character, and that an admonishment was not sufficient to allay the resulting prejudice.
Generally, other crimes evidence is inadmissible at trial. However, when such evidence tends to prove a material issue and has independent relevance other than showing the defendant's bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. State v. Sterling, 95-673 (La.App. 5 Cir. 2/27/96), 670 So.2d 1316; State v. Foret, 96-281 (La.App. 5 Cir. 11/14/96), 685 So.2d 210. In child abuse cases, evidence of sex crimes with a child other than the victim can be used to show motive, system, or opportunity and plan, provided the requirements of State v. Prieur, 277 So.2d 126 (La.1973) are met. La. C.E. art. 404B(1); State v. Sterling, 95-673, at p. 6, 670 So.2d at 1321.
Here, the state did not file a proper Prieur notice prior to trial. Moreover, the state failed to make a showing that the evidence was more than just a subterfuge for depicting defendant as a bad person. Accordingly, the trial court properly disallowed the state's line of questioning.
Pursuant to La.-C.Cr.P. art. 770[1], the remedy for the improper admission of other crimes evidence is a mistrial. In this case, the trial court's failure to grant a mistrial was error. See, State v. Pardon, 97-248 (La.App. 5 Cir. 10/15/97), 703 So.2d 50.
On appeal however, an improper reference to other crimes is subject to the harmless error rule. State v. Johnson, 94-1379, p. 7 (La.11/27/95), 664 So.2d 94, 101-102; State v. Thomas, 96-464, p. 4 (La.App. 5 Cir. 11/14/96), 685 So.2d 261, 263-264. The test for determining harmless error is whether the verdict actually rendered in that case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Pittman, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748.
In this case, the victim clearly and unequivocally testified that defendant fondled her while she was a guest in his home. Her testimony was corroborated by that of the physician who examined her. Thus, we find that the prosecutor's question, unanswered by the defendant and coupled with the trial court's admonition to the jury, did not contribute to the verdict, and therefore any error was harmless.
In his second allegation of error, the defendant argues that the trial judge erred in allowing the entire testimony of Dr. Scott Benton as said testimony went beyond the scope of the state's opening statement.
La.-C.Cr.P. art. 766 provides: "The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." The purpose of an opening statement is to acquaint the jury with the case in order to prevent confusion, and to protect the defendant from being taken by surprise or prejudiced in the preparation of his defense. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713. The state need only set forth the theory of its case in general terms in the opening statement. It is not *1086 necessary that the state detail every shred of evidence; it is sufficient that the state give a general description of the evidence it plans to introduce. State v. Behn, 445 So.2d 516 (La. App. 3 Cir.1984). The scope and extent of the opening statement is left to the sound discretion of the trial judge, and the trial court's rulings in that regard will not be disturbed on appeal absent a manifest abuse of discretion. State v. Allen, supra.
In this case, the transcript of the prosecutor's opening statement shows that he did not, in fact, mention that he planned to introduce the testimony of Dr. Scott Benton regarding his physical examination of the victim. When the state later called Benton as a witness, defense counsel objected on the grounds that this testimony was not alluded to in the opening statement.
LSA-C.Cr.P. art. 769 provides:
Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.
If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense.
We find that, under the circumstances of this case, the trial judge acted within her discretion in overruling counsel's objection. Defendant did not, at the time of his objection, nor does he in his appeal brief, state how he was surprised or otherwise prejudiced by the state's failure to mention Dr. Benton in its opening statement. The record shows the state provided counsel with a copy of the doctor's final report prior to trial. Moreover, during Dr. Benton's testimony the trial court ruled that the doctor could only refer in his testimony to materials which had previously been provided to the defense. The doctor's testimony regarding the victim's accusations, as well as his physical findings, corroborate the victim's own testimony. Compare State v. Rasberry, 564 So.2d 740 (La.App. 2 Cir.1990). Thus, we find defendant's allegation to be without merit.
Defendant also requests that we review the record for errors patent, which we now do in compliance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note the following error which requires our attention.
LSA-C.Cr.P. art. 930.8 provides that a defendant has three years after his judgment of conviction and sentence become final within which to apply for post conviction relief. Subpart C of the article requires that the trial court inform the defendant of the three year prescriptive period at the time of sentencing. The trial court in this case did not so inform defendant. Accordingly, we remand the matter to the trial court with an order to send written notice of the prescriptive period to defendant within ten days of the rendering of this opinion, and to file written proof that defendant received such notice in the record of these proceedings. State v. Hall, 95-1073 (La.App. 5 Cir. 4/16/96), 673 So.2d 1127.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence and remand the matter to the district court with the above explained order.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] La. C.C.P. art. 770 provides:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.