738 So.2d 1131 (1999)
STATE of Louisiana
v.
Kenneth SIMMONS.
No. 98-KA-841.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
Rehearing Denied July 12, 1999.
*1132 Paul D. Connick, Jr., District Attoreny, Ellen S. Fantaci, Assistant D.A., Terry M. Boudreaux, Assistant D.A., George Wallace, Assistant D.A., Deborah A. Villio, Assistant D.A., Annex Gretna, La, for Plaintiff-appellee.
Katherine M. Franks, Louisiana Appellate Project, Baton Rouge, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA, and THOMAS F. DALEY.
*1133 EDWARD A. DUFRESNE, Jr., Judge.
The Jefferson Parish Grand Jury returned an indictment charging the defendant, Kenneth Simmons, with the second degree murder of Robert Harris, in violation of LSA-R.S. 14:30.1. The matter proceeded to trial before a twelve person jury, at the conclusion of which the defendant was found guilty as charged. The court subsequently sentenced the defendant to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals.

FACTS
On March 5, 1995, at approximately 7:00 p.m., Deputy Nicholas Nelson of the Jefferson Parish Sheriff's Office received a call of a possible homicide in the 300 Block of Robinson Avenue in Marrero. When he arrived, he discovered the body of twenty-five year-old Robert Harris lying on the side of the street. Harris was bleeding from the right eye and was not moving. At trial, Dr. Fraser Mackenzie, an expert pathologist, testified that Harris died at approximately 7:32 p.m. from a gunshot wound to the head.
After finding the victim, Deputy Nelson notified the detective bureau and other officers were dispatched to the scene. Robert Porche, the victim's companion, approached Deputy Nelson and related the events leading up to the shooting. Porche also showed Deputy Nelson the house on Robinson Avenue where he believed the shooter to be located. The police removed the occupants from the house, including the defendant, and brought them to the Detective Bureau to give statements.
At this point, the investigation was not focused on the defendant. The defendant gave two recorded statements, one to Lieutenant Maggie Snow and one to Detective Grey Thurman. Both officers testified that they had advised the defendant of his Miranda rights, and recordings of both statements were played for the jury and admitted into evidence.
In his first statement, the defendant said his name was "Joshua Simmons." He denied any involvement in the shooting and stated that he was inside the house at 363 Robinson Avenue at the time of the shooting. However, after other witnesses indicated that the defendant was outside at the time of the shooting, Detective Thurman questioned the defendant about this inconsistency. In his second statement, the defendant said that he had shot Harris because he believed that Porche and Harris were about to rob him. The defendant stated that Harris had a .38 caliber revolver in his right hand, and had his arm extended slightly behind his leg. The defendant told Detective Thurman that he fired two shots from a .25 caliber revolver as Harris reached up with his gun. The defendant said that after the shooting, he threw the gun into a vacant lot across the street and returned to 363 Robinson Avenue.
Later that night, Lieutenant Snow interviewed Robert Porche. Photographs of all of the men who had been inside the house that night were taken and a photographic line-up was compiled which included these photographs and one "fill-in." Lieutenant Snow showed these pictures to Porche, and he identified the defendant as the man who had shot Harris.
Officers searched the area that night and the following morning, but neither the defendant's .25 caliber weapon, nor any gun from the victim, was recovered. Two.25 caliber cartridges and two .25 caliber casings were recovered. Louise Walzer, an expert in firearms examination, testified that the two .25 casings had been "chambered," that is, loaded through the same weapon. While she could not say conclusively, she stated that it was "highly probable" these two casings had been fired from the same weapon.
At trial, the defendant urged that he had shot Harris in self-defense. Several defense witnesses, including the defendant, testified that they had seen Harris with a gun that night.

*1134 SUFFICIENCY OF THE EVIDENCE

On appeal, the defendant contends that the evidence presented at trial was insufficient to support his conviction for second degree murder. Specifically, he contends that the state failed to prove beyond a reasonable doubt that he did not act in self-defense.
The constitutional standard for testing the sufficiency of evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Forrest, 95-31 (La.App. 5 Cir. 2/14/96), 670 So.2d 1263, writ denied, 96-0654 (La.6/28/96), 675 So.2d 1117.
The defendant was convicted of second degree murder, which is defined in LSA-R.S. 14:30.1(A)(1) as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741 (La.1982).
In the present case, the defendant contends that the evidence supported a finding that he committed justifiable homicide because he acted in self-defense. According to LSA-R.S. 14:20, a homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." A person who is the aggressor or who brings on a difficulty cannot claim self-defense, unless he or she withdraws from the conflict in good faith. LSA-R.S. 14:21. When a defendant raises justification as a defense to murder, the state must prove beyond a reasonable doubt that the killing was not justified. State v. Baldwin, 96-1660 (La.12/12/97), 705 So.2d 1076, cert. denied, ___ U.S. ___, 119 S.Ct. 84, 142 L.Ed.2d 66.
The state's evidence consisted of testimony from officers on the scene, as well as other witnesses. Robert Porche, the victim's companion, testified about the events leading up to the shooting. Porche stated that he and Harris had stopped at the corner of Robinson Avenue and Fourth Street to get high and to sell drugs. Porche said they had been smoking crack and drinking alcohol for over a day. When they reached Robinson Avenue, Porche said that the defendant approached them and asked what they were doing in the area. Harris and the defendant exchanged words, and "out of the blue," the defendant shot Harris. When Harris fell to the ground, Porche leaned over him and told the defendant to "chill because you already shot my friend." The defendant told Porche to get the "f_ _ _ from around there before he shoot me, too." Porche said he ran to the corner with the defendant chasing him, and he called the police from a pay telephone around the corner. Porche denied that either he or Harris had a gun or were going to rob anyone that night. Porche identified the defendant from a photographic line-up later that night and made an in-court identification of the defendant.
The defense, on the other hand, contended the shooting was in self-defense. At trial, the defendant testified that he was visiting friends that night at 363 Robinson Avenue and decided to walk next door to 365 Robinson where Cedric Byrd resided. The defendant said that he had a.25 caliber gun, but left it outside because *1135 the neighbors had a small child and he did not want to bring it in. When Porche and Harris approached, he thought they were going to rob him. He said that he saw Harris holding a gun behind his leg. The defendant backed up to the gate where he had left his gun, grabbed the weapon, and fired two shots as Harris was "coming up" with his gun. After the shooting, the defendant returned to 363 Robinson Avenue and went inside the house. He denied running after Porche. The defendant testified that he shot Harris because he believed Harris was going to shoot him. The defendant also told police that he had never seen Porche or Harris before.
Sean Toussaint testified that he was standing outside of 363 Robinson when Harris and Porche walked up, and said that this is where they were going to "make it." He said the two men exchanged words with the defendant. He saw Harris raise his shirt and produce a gun, and then he heard two shots. Toussaint said that Porche was "fumbling" with Harris' body after it fell, and then Porche ran away. Toussaint admitted giving prior statements to the police in which he denied that he saw the shooting, but claimed that he gave the statements because the police were threatening him.
Cedric Byrd, who lived at 365 Robinson Avenue, testified that he had known the defendant for about ten years. He said that he was at his home and saw Porche and Harris walk down the street and pass Sean Toussaint, who was counting his money. One of the men said this is where "they were going to get paid." The defendant approached and asked the two men who they were and why they were in the area. Byrd said Harris raised his gun and said "none of your business." Byrd heard shots and saw Harris fall to the ground. He said Porche picked up Harris' gun and ran. Byrd stated he returned inside his house, and called Detective Thurman the following morning and related what he had seen.
Michael Sims, the defendant's cousin, said that when he walked outside of 363 Robinson, he saw the victim fall with the gun in his hand. He, too, testified that Porche took the gun and ran away with it. Sims stated that the defendant did not run after Porche after the shooting. Sims said that he initially told the police that he did not see anything because he was scared of the police.
Clifford Jones said that between 8:00 p.m. and 9:00 p.m. that night, he went to McDonald's to eat. As he was walking down the street, Harris, whom he knew, and Porche approached him. Jones stated that Porche had a gun, and that the two robbed him and that one of them also stabbed him. Jones did not report the robbery.
Dr. Fraser Mackenzie testified that Harris had sustained a gunshot wound to the head that had entered through his right eye. Harris had also sustained a gunshot wound to his right arm. The bullet passed through the back of the arm and exited the front of the arm. Dr. Mackenzie testified that the back of the arm would have to be forward for the bullet to have entered the back of the arm and further that the wound was consistent with the victim's right arm in front of his right eye, in a defensive posture. Dr. Mackenzie stated that the path of the bullet was not consistent with the victim facing the shooter with his right hand at his side, reaching across his waist, or reaching behind or to the side.
The jury was required to evaluate evidence that supported both the state's and the defendant's theory of the case. Here, the jury made a credibility determination and believed the testimony of the state's witnesses rather than the defense witnesses' testimony. It is not the function of the reviewing court to assess the credibility of witnesses or to re-weigh the evidence. State v. Batiste, 96-1010 (La. App. 5 Cir. 1/27/98), 708 So.2d 764, writ denied, 98-913 (La.9/4/98), 723 So.2d 954. Thus, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have *1136 found, beyond a reasonable doubt, that the homicide was not committed in self-defense and that the evidence was sufficient to support the defendant's second degree murder conviction.

IMPERMISSIBLE REFERENCE TO OTHER CRIMES
The defendant asserts that the trial judge erred in denying his motion for mistrial and motion for new trial based upon the state's reference to "other crimes" allegedly committed by him. Specifically, the defendant complains about a statement by the prosecutor during closing argument that the defendant's motive for killing the victim was to protect his "turf ... where he [sold] drugs." The defendant asserts that prosecutor's argument was improper because no evidence was introduced at trial to show that the defendant sold drugs.
The record in the present case reveals that the defendant objected when the prosecutor said that the killing was not "a justifiable homicide. It was plain, old fashion (sic) murder for greed. Kenneth `Canine' Simmons was trying to protect his little turf, his little area where he sells drugs and he was not about" The jury was removed and the parties had an off-the-record discussion in chambers. When the parties returned to open court, still out of the presence of the jury, the defendant moved for a mistrial, and the state submitted the matter to the court without argument. After a recess, the trial judge denied the defendant's motion, but admonished the jury as follows:
In our Code of Evidence and Code of Criminal Procedure, we have certain rules that can and cannot be said. The State's attorney, in closing, made reference to the defendant as selling drugs on the street.
There has been no evidence or anything before you to ever indicate that the defendant does, did, or ever sold drugs. The only evidence before youwell, I can't commentnever mind. There's never been any evidence for the defendant. You understand that? Any comment made by the State's attorney in closing is an error. It is to be stricken and I know it's difficult, but it is to be erased from your memory.
It would be totally unfair to even give it the slightest bit of consideration. Do we understand that? Are we perfectly clear?
It was a mistake done in the heat of battle. All right? We're going to go forward. Let's finish the closing.
LSA-C.Cr.P. art. 770 applies to references to "other crimes" made by the prosecutor during argument and provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
In the present case, as there was no evidence introduced at trial which indicated that the defendant sold drugs, we find that the prosecutor's remark during closing argument was an impermissible reference to another crime. Thus, the trial court's failure to grant a mistrial was error. On appeal, however, an improper reference to other crimes is subject to the harmless error rule. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94; State v. Koontz, 98-367 (La.App. 5 Cir. 11/25/98), 722 So.2d 1081. An error is harmless *1137 when the guilty verdict actually rendered at trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Johnson, supra; State v. Koontz, supra.
Considering the strong admonition the trial judge gave, and in light of the evidence against the defendant, as discussed previously, we find that the guilty verdict was surely unattributable to the prosecutor's improper remark, and thus, any error can be deemed harmless. Accordingly, we find that the trial judge did not err in denying the defendant's motion for mistrial on this basis.
With regard to the trial judge's denial of the defendant's new trial motion, according to LSA-C.Cr.P. art. 851, "[t]he motion for a new trial is based on the supposition that injustice has been done to the defendant, and, unless such injustice is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded." The ruling on a motion for a new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of an abuse of that discretion. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212. In light of our foregoing discussion, we also find that the trial judge did not abuse his discretion in denying the defendant's motion for new trial.

ADMISSIBILITY OF STATEMENT
On appeal, the defendant also complains that the trial judge erred in allowing the state to introduce his statement that he "always lies to the police" made during booking in response to a custodial interrogation. The defendant contends that the state failed to establish that the statement was made knowingly and voluntarily, after a reiteration of the advice of rights.
Before a defendant's confession or inculpatory statement may be introduced into evidence, the state must affirmatively show that the statement was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, threats, or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D); State v. Lavalais, 95-320 (La.11/25/96), 685 So.2d 1048, cert denied, ___ U.S. ___, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997); State v. Bentley, 96-795 (La.App. 5 Cir. 3/25/97), 692 So.2d 1207. If the statement was elicited during custodial interrogation, the state must also show that defendant was advised of his constitutional rights, as set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In reviewing a trial judge's ruling on a motion to suppress a confession, the reviewing court may consider all pertinent evidence adduced at trial, in addition to evidence presented at the hearing. State v. McCorkle, supra.
In the present case, the record reflects that officers read the defendant his Miranda rights twice before he was booked. Lieutenant Snow, who did not testify at the suppression hearing, testified at trial that after 10:00 p.m., she read the defendant his rights, the defendant signed a waiver of rights form, and the defendant waived his rights and voluntarily gave a statement to her. Detective Thurman testified at the suppression hearing held earlier that day, that he advised the defendant of his Miranda rights at 1:45 a.m. prior to the second statement, that defendant signed a waiver of rights form, and that the defendant waived his rights and gave a voluntary statement. The defendant was booked later that morning. Here, the defendant had been read his Miranda rights twice and had signed two waiver of rights forms before he was booked by Detective Gurtner.
Based on the foregoing, we find that the state satisfied its burden of showing that the statement to Detective Gurtner was knowingly and voluntarily made and thus, the trial judge did not err in allowing the introduction of the statement.

PROSECUTORIAL MISCONDUCT
The defendant also complains that there was a pattern of prosecutorial misconduct in this case which impacted the verdict.
*1138 The defendant first contends that the prosecutor committed misconduct in voir dire by referring to the area where the crime occurred as one of high crime. The prosecutor began the voir dire by asking the prospective jurors, "... where would most of you expect most crime to take place? Let me help you. In a high crime area?" Defense counsel objected to the characterization of the scene of the shooting as one of high crime. The trial judge sustained the objection and told the prosecutor to be careful. The defendant further complains that the prosecutor's following remarks improperly commented on race:
MR. WALLACE (assistant district attorney):
Now, in this case we are going to present direct evidence. You people will have to decide conclusions as to that defendant's guilt based on direct evidence. But, as I said earlier, we take our cases as we find them. Some crimes, most crimes, happen in areas that none of you people probably go to very often. None of you people would go to, spend time, let your children go to. Rough parts of town, sometimes dealing with rough kinds of people. You, nonetheless, will have to decide whether Robert Harris was murdered by this defendant, based on the evidence. And you know why, don't you? You all know why.
Does the State of Louisiana say George Wallace and Debbie Villio, you go prosecute people when they're murdered, when those people are white, make over a hundred and fifty thousand a year, live in Chateau Estates
MR. NETTERVILLE (defense counsel):
Objection. Objection. Objection.
MR. WALLACE:
No. It says
THE COURT:
I'm going to let him finish the finish the statement first.
MR. WALLACE:
No. It says the killing of any human being. Anyone who is the victim of a crime. Society has a right to bring the accused killer of that person, however humble that person may be, however mighty that person may be. That person's killer is brought to a court of law in the State of Louisiana. And you people would think less of me and less of that woman there (indicating) if we did it any other way, wouldn't you?
The trial judge subsequently denied the defendant's mistrial motion. The defendant filed an application for supervisory writs, which this Court and the Louisiana Supreme Court denied. State v. Simmons, 97-K-349 (La.App. 5 Cir. 4/15/97), State v. Simmons, 97-KK-994 (La.4/17/97), 692 So.2d 426.
On appeal, the defendant urges that the remarks constituted prosecutorial misconduct because they improperly referred to race. LSA-C.Cr.P. art. 770 provides that a mistrial shall be granted when the prosecutor, during trial or argument, directly or indirectly refers to race, if the comment is not material and relevant and might create prejudice against the defendant in the mind of the jury.
In the instant case, the prosecutor's comment that crimes occur in high crime areas did not refer to race. Moreover, the record reflects that the 300 Block of Robinson Avenue in Marerro, the area where the crime occurred, was an area of high crime. Detective Thurman testified that the area is one of high crime. Porche testified that he and the victim were on Robinson to sell drugs and to get high. Finally, the jurisprudence reflects that the area is one where crimes occur. See State v. Lott, 97-1002 (La.App. 5 Cir. 5/27/98), 712 So.2d 289. Furthermore, the state's remark that the victim did not reside in Chateau Estates was not an improper reference to race. Rather, the thrust of the comments was to show the jury that the state must prosecute a murder, even if the victim is an unsympathetic one. Based on the foregoing, we do not find that the *1139 prosecutor committed misconduct in making these remarks.
The defendant also complains that the state misrepresented the scope of the statement made to Detective Gurtner during booking, thereby prejudicially misrepresenting the strength of the state's case. The record reflects that the state informed the defense of the statement in its answer to the defendant's motion for discovery filed on April 2, 1997 as follows:
1. The State also intends to introduce statement made by the defendant to Det. Jeff Gurtner on March 5, 1995, at approximately 2:45 A.M. wherein he stated he always gives a false name to the police.
The state reminded the defense of the existence of this statement at the suppression hearing and again informed the defense it intended to use the statement made to Detective Gurtner. At trial, Detective Gurtner testified that during booking, in response to a question as to why he falsely gave his name as "Joshua" instead of "Kenneth," the defendant replied that "he always lies to police."
Based on the foregoing, we find that the state provided the defense with sufficient notice that the state would use the statement at trial. Moreover, we note that the statement was limited to the particular question asked and the information obtained by Detective Gurtner was incidental and not relevant or probative in establishing an element of the crime for which the defendant was charged and convicted.
The defendant further complains that the prosecutor improperly referred to inadmissible other crimes evidence during the cross-examination of the defendant. The prosecutor questioned the defendant about the events leading up to and immediately after the shooting as follows:
Q (Assistant district attorney):
Okay. All right. Well, let's go back. Robert Harris, going to rob you, maybe kill you. Robert Harris draws a gun and you, in fear of your life, shoot him. He falls to the ground, gun still in his hand. He falls to the ground. He's laying on the ground. I assume the gun was there, too. Now his friend leans over him and you let his friend lean over him and take a gun and what possibly use on you? You just killed his friend. Wouldn't you do that much for one of your friends? Pick up a gun and shoot the guy that just killed him.
A (Defendant):
I don't know.
Q (Assistant district attorney):
You don't know; (sic) do you? We know one person you killed. We can't speculate about anybody else; (sic) is that right?
The defendant made an objection, which the trial judge overruled. The state urges on appeal that the remark about "anybody else," was not to imply that the defendant had killed someone else; rather, the state asserts that the meaning of the comment was that the defendant did not know how someone else would act when his or her friend had just been shot. We agree with the state's contention and further note that the prosecutor's remark, at best, was ambiguous and confusing. Moreover, the defendant failed to show how this remark contributed to the verdict so as to deny him a fair trial.
The defendant also argues that the prosecutors' remarks during closing argument were improper and should have provided grounds for a mistrial, even without continual objections by counsel, since they were part of a pattern of remarks which appealed to prejudice rather than evidence as a basis for the verdict. The defendant specifically complains about three instances, the first being during closing argument, when the prosecutor stated that "[w]e couldn't take the murderous killer, Canine,[defendant] out to the S.P.C.A. and put him to sleep, like the killing dog he is." The state concedes that these remarks characterizing the defendant as a killing dog, were beyond the evidence, but then *1140 points out that the evidence showed that the crime was morally reprehensible.
While prosecutors should refrain from such characterizations, the remark at issue, when taken in context of the evidence, is not so inflammatory as to warrant reversible error. See State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995). In the present case, the evidence showed that the defendant shot an unarmed man whom he had never met before at close range in the head.
The defendant also complains that he was prejudiced by the prosecutor's personal attack upon his trial counsel. During rebuttal, the prosecutor stated that "it frankly never ceases to amaze me about the moral rectitude and indignation and sanctimonious foolishness that can be mustered up by defense lawyers trying to get their client off." The prosecutor further stated that "it is amazing the sense of civic responsibility that some lawyers can muster when they're trying to get a murderer out of prison. Talk about your oxymorons."
The state's rebuttal shall be confined to answering the argument of the defendant. LSA-C.Cr.P. art. 774. While Louisiana jurisprudence on prosecutorial misconduct has allowed prosecutors wide latitude in choosing closing argument tactics, the prosecutor should refrain from making personal attacks on defense strategy and counsel. State v. Brumfield, 96-2667 (La.10/20/98), 737 So.2d 660, cert. denied, ___ U.S. ___, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999). Nevertheless, a conviction will not be reversed because of improper argument unless the reviewing court is "firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict." State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). In the present case, we find that the comments about defense counsel, while improper, were not so inflammatory or prejudicial as to warrant reversal of the defendant's conviction. See State v. Francis, 95-194 (La.App. 5 Cir. 11/28/95), 665 So.2d 596.
Lastly, the defendant complains that the prosecutor improperly said that the state had to keep Robert Porche in jail to ensure his attendance at trial. The defendant contends that the remarks implied that Porche's life was in danger from the defendant. However, the record reflects that defense counsel in his closing argument said that the state had to put Porche in jail to prevent him from doing drugs, to make sure he comes to court because he was undependable, and further implied that the state coerced Porche's testimony by placing him in jail. The complained of remark was made by the prosecutor in response to the defendant's closing argument and, in any event, was not so prejudicial as to require reversal.
The defendant urges that all of these errors combined indicate a pattern of misconduct that requires reversal of his conviction. This court has carefully examined each of the errors alleged by the defendant and found them to be without merit. We are unwilling to say that the cumulative effect of assignments of error lacking in merit warrants reversal a conviction. A defendant is not entitled to a perfect trial, only a fair one. See State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218. This court's reading of the record convinces us that the defendant received a constitutionally fair trial. Based on the foregoing discussion, we find that the defendant's claims of prosecutorial misconduct are without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975).
Such a review reveals that the defendant was incorrectly advised of the provisions of LSA-C.Cr.P. art. 930.8. That article requires a trial judge to inform the defendant at sentencing that he has three years *1141 after his judgment of conviction and sentence becomes final within which to apply for post conviction relief. The trial judge in this case inaccurately informed the defendant that he had three years from "today's date to seek post conviction relief." Accordingly, we instruct the trial court to send appropriate written notice of the prescriptive period to the defendant within ten days of the rendering of this Court's opinion and to file written proof in the record that the defendant received such notice. See State v. Stelly, 98-578 (La. App. 5 Cir. 12/16/98), 725 So.2d 562.
For the reasons set forth herein, the defendant's conviction and sentence are affirmed and the case is remanded to the trial court for further action in accordance with this opinion.
CONVICTION AND SENTENCE AFFIRMED, REMANDED WITH INSTRUCTIONS.
CANNELLA, J., CONCURS.
DALEY, J., DISSENTS.
CANNELLA, J., CONCURRING WITH REASONS:
I agree with many of the sentiments expressed by Judge Daley and am very concerned with the pattern of prosecutorial misconduct evident in this case. However, I agree with the majority that under the facts herein, it did not rise to the level of reversible error. Therefore, I concur in the result reached by the majority, to affirm the conviction and sentence.
DALEY, J., DISSENTING WITH REASONS:
I respectfully dissent and would reverse the conviction and remand for a new trial.
The trial judge erred in denying the Motion for Mistrial and the Motion for New Trial based upon the state's reference to "other crimes" allegedly committed by defendant, Kenneth Simmons, for which no evidence was introduced, where the remark was part of a pattern of inappropriate comments by the prosecutor.
In rebuttal closing argument the prosecutor argued that the killing was not justifiable as argued by the defense, but was "plain, old fashion murder for greed. Kenneth `Canine' Simmons was trying to protect his little turf, his little area where he sells drugs and he was not about". The defense objected, demanding a mistrial. The court held a conference outside the presence of the jurors and stated that he would not grant the mistrial, but would admonish the jury. The defense persisted in its objection and demand for a mistrial.
La.C.Cr.P. art. 770 provides in pertinent part that "upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to... (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." The article goes on to expressly provide that "an admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial."
The defendant asserts that the prosecutor's argument was improper because no evidence was introduced at trial to show that the defendant sold drugs. The defendant further contends the trial judge improperly denied his new trial motion, in which he raised this issue again. The state responds that the error was corrected by the trial judge's admonition, and was in any case harmless error in light of the evidence against the defendant.
Despite the mandatory language of the article, the cases have held that such an error is subject to harmless error review. The standard here is that an error is harmless when the guilty verdict actually rendered at trial was surely unattributable to the error. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. I cannot say, in this case, that the verdict was "surely" unattributable to the error. This comment by the prosecutor provided the needed motive for why the defendant would simply *1142 walk up and shoot the victim without provocation, as opposed to the defense allegation that the victim had a gun and was raising his hand. I think this was a serious error that I cannot declare harmless.
In addition to appellant's claim of introduction of impermissible other crimes evidence, the appellant contends the prosecutor's remarks during closing argument and rebuttal were improper. Specifically, the defendant complains of three instances of the state's argument:
1. During closing argument, the prosecutor stated that "[w]e couldn't take the murderous killer, Canine, [defendant] out to the S.P.C.A. and put him to sleep, like the killing dog he is."
2. In rebuttal, the prosecutor made insulting remarks about defense counsel.
3. In rebuttal, the prosecutor stated that the state put Robert Porche in jail to keep him alive.
Defendant acknowledges that his counsel failed to object to some of these instances, and the record reflects that defendant did not object to instances (1) and (2). Nevertheless, he urges this Court to review these claims. This Court has recognized that despite the lack of an objection, extremely prejudicial and inflammatory remarks in closing argument require reversal. State v. Rochon, 98-717, p. 8 (La.App. 5 Cir. 3/10/99), 733 So.2d 624; State v. Johnson, 98-281, p. 8 (La.App. 5 Cir. 9/29/98), 719 So.2d 1141, 1146; State v. Francis, 95-194, p. 11 (La.App. 5 Cir. 11/28/95), 665 So.2d 596, 603; See also State v. Hayes, 364 So.2d 923 (La.1978).
The state concedes that these remarks characterizing the defendant as a killing dog, were beyond the evidence, but the state points out that the evidence showed that the crime was morally reprehensible.
The defendant also complains that he was prejudiced by the prosecutor's personal attack upon his trial counsel. During rebuttal, the prosecutor stated that "it frankly never ceases to amaze me about the moral rectitude and indignation and sanctimonious foolishness that can be mustered up by defense lawyers trying to get their client off." The prosecutor further stated that "it is amazing the sense of civic responsibility that some lawyers can muster when they're trying to get a murderer out of prison. Talk about your oxymorons."
The state's rebuttal shall be confined to answering the argument of the defendant. LSA-C.Cr.P. art. 774. While Louisiana jurisprudence on prosecutorial misconduct has allowed prosecutors wide latitude in choosing closing argument tactics, the prosecutor should refrain from making personal attacks on defense strategy and counsel. State v. Brumfield, 96-2667 (La.10/20/98), 737 So.2d 660, 1998 WL 727412, cert. denied, ___ U.S. ___, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999).
These comments by the prosecutor are contrary to the Code of Criminal Procedure and Code of Ethics. Improper use of other crimes evidence, improper remarks about the defendant and improper remarks about defense counsel prevent me from affirming this conviction. I would reverse defendant's conviction, vacate his sentence and remand for a new trial.