757 So.2d 115 (2000)
STATE of Louisiana
v.
John C. BALLAY.
No. 99-KA-906.
Court of Appeal of Louisiana, Fifth Circuit.
February 29, 2000.
*119 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Joan Benge, Assistant District Attorneys, Gretna, Louisiana, Counsel for the appellee The State of Louisiana.
Kevin V. Boshea, Williams & Boshea, New Orleans, Louisiana, Counsel for defendant-appellant.
Court composed of Judges SOL GOTHARD, JAMES L. CANNELLA and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

FACTS
Defendant John Ballay, sentenced as John C. Ballay, appeals from his conviction of theft of goods between $100 and $500, in violation of La.R.S. 14:67.10(B)(2) and sentence to life imprisonment as a fourth felony offender. For the following reasons, we affirm the conviction and the sentence.
Defendant was charged by a Bill of Information of violating La. R.S. 14:67.10(B)(2), theft of goods valued between $100 to $500. The State filed notice of intent to use evidence of other crimes and notice of intent to introduce statements made by the defendant into evidence. After the trial court conducted a Prieur[1] hearing, the court ruled that the testimony of Ms. Juliet Berkel, Mr. Brad Guillot, and Mr. Jimmy Johnson regarding two prior shoplifting/refund fraud crimes was admissible under La. C.E. 404(b) because the crimes demonstrate that defendant had a system/modus operandi to shoplift. Defendant was tried on August 25, 1998, to August 27, 1998, and thereafter the jury found the defendant guilty as charged.
At trial, Ms. Juliet Berkel, loss prevention manager at K-Mart, testified that she was working behind the jewelry counter when she observed defendant come into the K-Mart at 7000 Veterans Memorial Boulevard on August 10, 1997. Ms. Berkel remembered defendant from a prior shoplifting incident at another K-Mart. Ms. Berkel saw defendant come in empty handed, walk over to the service desk area, take a shopping basket, and proceed to the men's department. She signaled to her assistant, Mr. Johnny Burns, to start surveillance on defendant.
While in the men's department, defendant selected two pairs of Route 66 jeans, *120 Britannia jeans, Fruit of the Loom socks, a tank top, and a Basic Edition tank top. Defendant then placed the merchandise into the shopping cart and proceeded toward the domestic department where he selected a Martha Stewart king sheet set. Defendant then turned toward the towel area. Ms. Berkel lost sight of defendant for about 30 seconds, however, she then located defendant and noted that he had placed the merchandise into a white Maison Blanche bag which he obtained from underneath his shirt. When she picked up surveillance again, all the merchandise was inside of the Maison Blanche bag. Defendant then went to the health and beauty section and selected a pack (6) of Trojan condoms and placed those into the bag. Finally, defendant proceeded toward the service desk. At the service desk, defendant removed all of the items out of the bag.
At this point, Ms. Berkel called the clerk at the service desk, Ms. Sharon Talabock, and asked Ms. Talabock what was occurring. Ms. Talabock informed Ms. Berkel that defendant was requesting a refund on two pairs of jeans for which he had a receipt. Defendant was also requesting a refund for all of the items on the counter. After defendant received a refund for the two pairs of jeans, he placed all of the other merchandise in the Maison Blanche bag and attempted to exit the store. Defendant concealed merchandise valued at $140.68 in the Maison Blanche bag.[2] Ms. Berkel apprehended him after he had passed the cash registers. When Ms. Berkel placed a handcuff on him, defendant became belligerent. Ms. Berkel filled out the loss control information report and listed the merchandise that defendant tried to steal.
Ms. Berkel testified that she did not keep the Maison Blanche bag nor did she photograph it because it was not K-Mart policy to do so. Ms. Berkel does not know the whereabouts of the sales receipt that enabled defendant to receive the refund for the two pairs of jeans because defendant was threatening her and she was so shaken that she forgot to ask Ms. Talabock for the sales receipt. She further testified that the two pairs of returned jeans were at the service desk while the rest of the merchandise was in the Maison Blanche bag.
Mr. Burns testified that he was a security guard for the KMart at 7000 Veterans Memorial Boulevard on August 10, 1997. He testified that at about 9:15 P.M., he was standing on the register side of the service desk when he observed defendant enter the store empty-handed, obtain a shopping cart, and proceed to the men's department. Ms. Berkel signaled Mr. Burns to follow defendant. Mr. Burns observed defendant select some men's jeans, men's tank top, and some socks. Defendant then went to domestics and selected Martha Stewart sheets. While in domestics, defendant pulled out a white Maison Blanche bag from underneath his shirt and put the merchandise in it. After he went to the health and beauty section, he went to the service desk, put all the clothes on the counter, and asked for a refund. Defendant was given a partial refund. He then placed all of the merchandise in the Maison Blanche bag and attempted to exit the store when Ms. Berkel then apprehended him.
Ms. Talabock testified that on August 10, 1997, she was working at the K-Mart at 7000 Veterans Memorial Blvd. She was supervisor for the cashier and service desks. She testified that defendant walked up with his Maison Blanche bag and took the merchandise out of the bag. Ms. Talabock gave him a refund for only two pairs of jeans because he had a receipt for them. She made the judgment call to have him fill out a refund ticket for the two pairs of jeans. Although defendant was also trying to obtain a refund for the other items for which he did not have a receipt, Ms. Talabock did not give defendant a refund for the other items because *121 Ms. Berkel instructed her to give defendant a refund for only the items on the receipt. After she gave defendant the refund, he put the merchandise in his bag and attempted to leave the store. Defendant was detained after he passed all of the cashiers. Defendant struggled with Ms. Berkel and Mr. Johnson when he was apprehended.
Deputy Robert Brocato testified that he is employed with Jefferson Parish Sheriff's Office (hereafter JPSO). On August 10, 1997, he was called out to the K-Mart at 7000 Veterans Memorial Boulevard on a shoplifting charge. Deputy Brocato testified that when he arrived on the scene, defendant was not handcuffed and he was in the hall screaming obscenities. Deputy Brocato testified that he had to subdue the defendant and bring him to the ground to handcuff him because defendant was out of control. Deputy Brocato was unable to complete his report at the scene because defendant was disruptive and Ms. Berkel was upset.
Deputy Brocato testified that his investigation revealed that defendant was observed entering into the store empty-handed. Defendant went to the cashier refund desk with clothing that was inside of a bag to exchange it for cash. He further testified that defendant had a receipt for the two pairs of jeans for which he received a refund. A pile of clothes was on a table in the loss prevention office. He photographed the items and placed the picture in the evidence room.
The trial court admitted evidence of other crimes at trial. Ms. Berkel testified about a prior incident in which she was involved with Mr. Guillot in apprehending defendant for shoplifting at the K-Mart at 2940 Veterans Memorial Boulevard on June 17, 1997. Ms. Berkel testified that she only observed defendant at the service desk from the surveillance camera. After she saw defendant receive a refund, she left the camera room and came to the service desk. She approached defendant after he received a refund in hand and he was subsequently apprehended.
On June 17, 1997, Mr. Guillot was employed as a loss control manager with K-Mart at the store located at the 2940 Veterans Memorial Boulevard and he witnessed defendant shoplifting. He testified that defendant entered the store empty-handed and proceeded to the home fashions department where defendant then took possession of two packages of Martha Stewart sheet sets, each valued at $29.99, and placed them in a large K-Mart bag. Defendant placed the bag in the shopping cart. Defendant then took the shopping cart to the check out area in front of the store and abandoned the cart. Defendant re-entered the store and went to the shopping cart containing the two packages of Martha Stewart sheets. Defendant proceeded to the service counter, presented the two Martha Stewart sheet sets to the service desk associate, and demanded a refund. Defendant did not present a sales receipt for the items. Defendant completed the refund identification ticket and he received a refund totaling $65.23. When defendant received the money in hand, Mr. Guillot apprehended him. Mr. Guillot checked the surveillance video tape which showed defendant re-entering the store for the second time empty-handed. Mr. Guillot personally observed defendant select the shopping cart that contained the merchandise when defendant re-entered the store.
At trial, Mr. Johnson testified that op July 2, 1997, he was working as the loss control manager at the K-Mart in Harahan at Elmwood Shopping Center when he arrested defendant for shoplifting and refund fraud. Mr. Johnson observed defendant heading toward the hardware department. Defendant looked familiar, so Mr. Johnson decided to observe him. Mr. Johnson saw defendant remove a Marshall's bag from his person and select a one hundred piece wrench set from the *122 counter and place it in the bag. Defendant then left the hardware department and proceeded toward the domestics department where he selected one set of Martha Stewart sheets and removed the EAS[3] tag. Mr. Johnson stated that removing the EAS tag allows a person to leave the store without setting off the alarm. Mr. Johnson testified that the defendant then proceeded to take the shopping cart and went to the service desk, where he then requested the merchandise be refunded to him. When the cashier presented defendant with the cash, Mr. Johnson approached defendant and detained him. Mr. Johnson notified the JPSO. Mr. Johnson stated that he believed that the value of the merchandise amounted to about $60. Mr. Johnson testified that defendant wrote his name on the ticket as "J.C. Ballay."
After trial, the jury returned a verdict of guilty as charged. On September 4, 1998, defendant filed a motion for new trial which was subsequently denied. On September 10, 1998, the trial court sentenced defendant to two years at hard labor. On September 10, 1998, the Jefferson Parish District Attorney filed a Multiple Bill of Information alleging that defendant is a fourth felony offender. On October 30, 1998, defendant appeared in court and denied the allegations contained in the multiple offender bill of information. On January 22, 1999, the trial court found defendant guilty under the multiple bill statute La.R.S. 15:529.1 (A)(1)(c)(i), as a fourth felony offender, and sentenced him to life imprisonment without the benefit of suspension or probation. On February 12, 1999, defendant filed a Motion to Reconsider Sentence. On March 8, 1999, the trial court denied defendant's motion. Defendant timely appealed.

ASSIGNMENT NO. 1
Defendant argues that the trial court erred in commenting on the evidence presented in the trial of this matter. Specifically, defendant argues that the trial court commented on the evidence during an admonishment that she gave the jury. Defendant also argues that the trial court also commented inappropriately on defense counsel's ability to recall a witness's testimony. The State responds that defense counsel failed to object to these comments during trial and he is thus precluded from raising the issue on appeal. The State further responds that the trial court's comments were clearly made to explain her rulings, and she did not comment on the evidence.
La.C.Cr.P. art. 772 provides: "[t]he judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
La.C.Cr.P. art. 772 does not apply to statements of the trial judge's reasons for rulings on objections relating to the admissibility of evidence or to explain the purpose for which evidence is offered or admitted, provided the remarks are not unfair or prejudicial to the defendant. State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1231, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609. Moreover, the trial judge's comments on the evidence have been held to be harmless error if those remarks do not imply an opinion as to the defendant's guilt or innocence. State v. Felde, 422 So.2d 370, 387-388 (La.1982), cert. denied, Felde v. Louisiana, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); State v. Styles, supra.
During her opening statement, the prosecutor commented that Ms. Berkel will remember the defendant because he was belligerent and shouted obscenities at her. The defendant then made a motion for a mistrial. A bench conference was held outside of the presence of the jury. The trial judge denied defense counsel's motion. After the bench conference, the trial court then admonished the jury. The trial court stated:

*123 "Ladies and gentlemen of the jury, I'm going to admonish you at this time. I think that the prosecution might have over-stated some of the oral statements that were made by the defense in her zeal to argue the facts that she's going to prove at trial. So, with regard to the, some of the obscenities that she just stated to the jury, please disregard those, okay. The evidence is going to show what Mr. Ballay said and we're going to let the evidence inform you as to exactly what statements he made to the security officer at K-Mart."
As noted by the State, defense counsel did not object at trial to the comments which are now assigned as errors in his brief. La.C.Cr.P. article 841A provides, in part, that "[a]n irregularity or error cannot be availed of after the verdict unless it was objected to at the time of occurrence." The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075-1078, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, and 94-1361 (La.11/4/94), 644 So.2d 1055; State v. Styles, supra.
In State v. Rochon, 98-717 (La.App. 5 Cir. 3/10/99), 733 So.2d 624, This Court reviewed comments made by the trial court absent an objection by defendant. In Rochon, the defendant argued that the trial court erred by impermissibly commenting on the evidence and requiring defendant to characterize the testimony of the arresting deputies as a lie or mistake. Defense counsel did not object to the trial judge's comments at trial. However, This Court reviewed the defendant's claim and determined that it was clear from the transcript that the trial judge did not comment upon or recapitulate the evidence, repeat the testimony of any witness, or give an opinion as to what has been proved, not proved, or refuted. Rochon, 733 So.2d at 629. This Court found that the statement by the trial judge was merely an effort to clarify the prosecutor's question and thus, it was permissible. Id.
In the present case, the statements by the trial court relate to defendant's motion for mistrial. In response to defendant's motion for mistrial, the trial court admonished the jury and then explained that the evidence will inform the jury as to what statements were made. The trial court's comments admonishing the jury to disregard the prosecutor's statements ensured that the prosecutor's remarks would not prejudice the defendant. La.C.Cr.P. art. 771. It is apparent that the trial court did not comment upon or recapitulate the evidence, repeat the testimony of any witness, or give an opinion as to what had been proved, not proved, or refuted. Id.
Defendant also argues that the trial court impermissibly commented on the defense counsel's recollection of the evidence and thus commented on the evidence itself at trial during the examination of Mr. Burns. The following exchange took place:
Prosecutor:
At some point and time on August 10, 1997, did he conceal all of those items in the bag?
Burns:
Yes, he did.
Prosecutor:
Is that sufficient for shoplifting?
Burns:
Yes, it is.
Defense Counsel:
Objection, Your Honor, that, that's something exactly opposite of to what he said before, he said that it's not sufficient at K-Mart.
Court:
That's not what he said, you're not stating the testimony correct.
Sit down, the jury remembers what he said, okay.
*124 A trial judge's disparaging remarks or intemperate criticism of defense counsel may constitute reversible error when such remarks adversely influence and prejudice the jury against the defendant. State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98), 708 So.2d 1099,1105-1106, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415. However, in order to constitute reversible error, the effect of the improper comments must be such as to have influenced the jury and contributed to the verdict. State v. Johnson, 438 So.2d 1091,1101-1102 (La.1983); State v. Gilmore, 529 So.2d 859, 862-863 (La.App. 4 Cir.1988), writ denied, 533 So.2d 373 (La.1988); State v. Glynn, 94-0332 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288, 1306, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464. We note that defendant has not shown, nor are we able to detect in any manner, how the above comments may have influenced the jury and contributed to the verdict. While the trial court did comment on the evidence by commenting that the defense counsel's recollection of the testimony was not what the witness stated, we find that the error is harmless because the remark did not imply an opinion as to the defendant's guilt or innocence. State v. Felde, 422 So.2d 370, 387-388 (La.1982), cert. denied, Felde v. Louisiana, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); State v. Styles, supra.

ASSIGNMENT NO. 2
Defendant contends that the trial court erred in admitting other crimes evidence because the State failed to meet the admissibility prerequisites of such evidence. Specifically, defendant argues that the trial court erred in allowing pending allegations of refund fraud to prove system in a theft of goods prosecution. Defendant further argues that the prejudicial effect of the evidence outweighs its probative value because it directly contributed to the defendant's conviction by allowing the prosecutor to paint the defendant as a "bad man." The State responds that it filed its intent to introduce evidence relating to other shoplifting/refund fraud crimes that occurred on June 17, 1997, and on July 2, 1997, for the purpose of establishing system, pattern, knowledge, motive, and/or intent in accordance with State v. Prieur, 277 So.2d 126, 130 (La.1973). After conducting a Prieur hearing, the trial court ruled that the evidence was admissible.
At trial, the State offered the testimony of Ms. Berkel, Mr. Johnson, and Mr. Guillot in presenting other crimes evidence for the purpose of showing system/modus operandi.
Ms. Berkel and Mr. Guillot testified that on June 17, 1997, they were employed at the K-Mart store located at 2940 Veterans Memorial Boulevard. They testified that they were involved in apprehending the defendant for shoplifting/ refund fraud. Mr. Guillot witnessed the entire incident and testified that defendant placed two packages of Martha Stewart sheets in a large K-Mart bag. Defendant proceeded to the service counter and presented the two sets of sheets to the service desk associate and demanded a refund. Defendant completed the refund identification ticket and received a refund totaling $65.23. When defendant received the money in hand, both Ms. Berkel and Mr. Guillot approached and apprehended him.
Mr. Johnson testified that on July 2, 1997, he saw defendant take a Marshall's bag from his person and place a one hundred piece wrench set and one set of Martha Stewart sheets in it. Mr. Johnson then saw the defendant proceed to take the shopping cart and proceed to the service desk, where he requested the merchandise be refunded to him. After defendant received the cash, he was apprehended. The value of the merchandise was about $60.
Article 404(B) of the Louisiana Code of Evidence provides the basic rule regarding the use of evidence of "other crimes, wrongs or acts" at trial. La. C.E. art. 404(B) states in pertinent part:

*125 (1) Except as provided in Article 412 [regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
Several other statutory and jurisprudential rules also play a role in determining the admissibility of such evidence. In State v. Code, 627 So.2d 1373, 1381 (La. 1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491, rehearing denied, 512 U.S. 1248, 114 S.Ct. 2775, 129 L.Ed.2d 887 (1994), the Louisiana Supreme Court set forth the following factors which must be met for other crimes evidence to be admissible under the system or modus operandi exception:
(1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is man of criminal character; (4) the other crimes evidence must tend to prove a material fact genuinely at issue; and (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.
The State is required to prove that defendant committed the other crimes by a preponderance of the evidence. State v. Guidroz, 98-377 (La.App. 5 Cir. 10/14/98), 721 So.2d 480, 486, writ denied, 98-2874 (La.2/26/99), 738 So.2d 1061. In each of the three incidents, defendant employed the same modus operandi; namely, K-Mart was the victim, defendant entered Mart empty-handed, a bag was hidden on defendant's person, defendant took merchandise and placed it in the bag, defendant took the bag to the refund desk and claimed that he bought the items, and defendant attempted to receive a refund for certain items. The State proved that the similarities between the thefts at the different K-Mart store demonstrate that the acts were not isolated incidents and they were part of a plan or system that defendant had developed in order to steal items and receive fraudulent refunds from K-Mart. We find that the probative value of the testimony regarding the other shoplifting incidents outweighs the prejudicial effect to defendant because of the similarities of the crimes.
Even if we were to find differently, the admission would be harmless error. See State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102, reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332; State v. Pittman, 95-382 (La. App. 5 Cir. 10/1/96), 683 So.2d 748, 758-759. The analysis for determining harmless error is whether the verdict actually rendered in this case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 278-279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), on remand, 623 So.2d 1315 (La.1993); State v. Pittman, 683 So.2d at 758-759. In light of the testimony offered by Ms. Berkel, Ms. Talabock, and Deputy Brocato in this trial, we find that the admission of the evidence, even if inadmissable, was harmless error since the jury surely could have convicted defendant based on their testimony regarding the theft that occurred on August 10, 1997. Thus, the trial judge did not err in admitting the testimony of Ms. Berkel, Mr. Johnson, and Mr. Guillot regarding other crimes evidence. This assignment has no merit.

ASSIGNMENT NO. 3
In his third assignment of error, defendant argues that the trial court erred *126 in denying the motions for mistrial made during the prosecutor's opening statement. The State responds that defendant received the appropriate remedies afforded by the Code of Criminal Procedure; therefore, the trial court did not err in denying defendant's motions for mistrial.
During the opening statement, defense counsel moved for a mistrial on seven different occasions. The first, second, sixth, and seventh concerned the reference by the prosecutor of "other crimes" evidence. The third, fourth, and fifth mistrial motions concerned alleged statements of the defendant not provided to the defense during pre-trial discovery.[4]
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Smith, 433 So.2d 688, 696 (La.1983). Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Brown, 96-1002 (La.App. 5 Cir. 4/9/97), 694 So.2d 435, 439, writ denied, 97-1310 (La.10/31/97), 703 So.2d 19.
The scope of the State's opening argument is prescribed in La.C.Cr.P. art. 766, which provides that the opening "shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the State expects to prove the charge." Pursuant to La. C.Cr.P. art. 770, the remedy for the improper admission of other crimes evidence is a mistrial. State v. Koontz, 98-367 (La. App. 5 Cir. 11/25/98), 722 So.2d 1081, 1085, writ denied, 99-0161 (La.5/28/99), 743 So.2d 659.
La.C.Cr.P. art. 770 states, in pertinent part:
Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) the failure of the defendant to testify in his own defense; or
(4) the refusal of the judge to direct a verdict.
We find that the trial court properly allowed Ms. Berkel, Mr. Johnson, and Mr. Guillot to testify and that, insofar as their testimony was properly admissible, the State did not err in referring to it in its opening statement.
Defendant argues that the prosecution failed to notify defendant that it would use certain statements defendant allegedly made when he was arrested at trial. The statements consist of derogatory remarks and threats that defendant made to Ms. Berkel.
La.C.Cr.P. art. 716 obligates the State, on defense motion, to produce any statements or confessions made by the defendant in connection with the case that are within the possession or knowledge of the prosecutor, and that are intended for use at trial. In the event of a discovery violation, the court has the discretion to permit the discovery of the undisclosed material, order a mistrial, grant a continuance, prohibit the introduction of the undisclosed material, or any other order, except dismissal, that is appropriate pursuant to La. C.Cr.P. art. 729.5.
La.C.Cr.P. art. 729.5(A) states, in pertinent part:

*127 A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate. (Emphasis added).
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the State through the district attorney or assistant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of court.
A review of the record reflects that the defendant was given open-file discovery in the instant case. Furthermore, on July 10, 1998, the State filed "Notice of Intention To Use and Introduce Statement of Defendant in Evidence" and gave defendant notice that it would introduce oral statements and profanities made by defendant to Ms. Berkel.
While the notice does not list every vulgar statement made by the defendant, it did put the defendant on notice that the statements would be introduced at trial. Therefore, defendant was not prejudiced in preparing his defense.
La.C.Cr.P. art. 768 states, in pertinent part:
Unless the defendant has been granted pretrial discovery, if the State intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the State's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
While it is clear that defendant's statements are prejudicial to the defendant, they are not inculpatory statements nor do they constitute a confession. Ms. Berkel testified that she was upset because defendant was shouting obscenities and threatening her. Deputy Brocato testified that he had to bring defendant to the ground to handcuff him because defendant was belligerent and threatening Ms. Berkel. Furthermore, police officers may refer to statements made to them by other persons involved in the case in order to explain their actions. State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Such statements, which also often fall into the res gestae exception, are admissible not to prove the truth of the statement being made, but rather are offered to explain the sequence of events leading to the arrest of the defendant and, as such, are not hearsay. State v. Calloway, 324 So.2d 801, 809 (La.1975). Even if the event in question is treated as res gestae evidence, the court must still engage in a La.C.E. 403 balancing test to determine if the probative value outweighs any unfair prejudice to the defendant in allowing such evidence to be used. State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20-21. In this case, the defendant's outbursts explain the reasons that Ms. Talabock and Ms. Berkel may have been too nervous to remember all the details to place in Ms. Berkel's report. Therefore, the probative value of events and statements leading up to the arrest outweighs the prejudice to the defendant. We find that this assignment does not have merit.

ASSIGNMENT NO. 4
Defendant argues that the evidence was not sufficient to support the verdict. The standard for reviewing the *128 sufficiency of evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 318-320, 99 S.Ct. 2781, 2788-2790, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court explained that when assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Rosiere, 488 So.2d 965, 968 (La.1986). Under Jackson, the standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Rosiere, supra; State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 816, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
The defendant was charged with theft of goods valued between $100 and $500, a violation of La.R.S. 14:67.10, which provides in pertinent part:
A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:
(1) Intentionally conceals, on his person or otherwise, goods held for sale.
. . . .
(3) Transfers goods from one container or package to another or places goods in any container, package, or wrapping in a manner to avoid detection.
Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Ms. Berkel, Ms. Talabock, and Deputy Brocato testified at trial that defendant attempted to exit the store with merchandise for which he had not paid. This evidence was sufficient to prove the "taking" element of the offense. It is possible to infer the requisite intent from the testimony that the merchandise was concealed in the Maison Blanche bag in defendant's possession. In State v. Johnson, 95-906 (La.App. 5 Cir. 1/28/97), 688 So.2d 162, this Court found, pursuant to an Anders[5] review, that evidence that the defendant concealed a department store's shirts in a bag lined with aluminum foil was sufficient to prove intent to take the items, and thus supported the defendant's conviction for theft of goods. This assignment has no merit.

ASSIGNMENT NO. 5
Defendant argues that the trial court erred in denying defendant's Motion for New Trial. The State responds that the defendant failed to brief the assignment of error and it should be considered abandoned.
According to La.C.Cr.P. art. 851, "[t]he motion for a new trial is based on the supposition that injustice has been done to the defendant, and, unless such injustice is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded." The motion for new trial is not the proper vehicle to raise an argument relating to the sufficiency of evidence. The proper vehicle to raise the sufficiency of evidence at the trial court in a motion for post-verdict judgment of acquittal. La.C.Cr.P. art. 821; State v. Ellis, 95-1005 (La.App. 5 Cir. 3/26/96), 672 So.2d 1007, 1008. The constitutional standard *129 for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, supra, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. We find that the evidence was sufficient to support the conviction. Moreover, all specifications or assignments of error must be briefed and we may consider any specification or assignment of error which has not been briefed as abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4. The defendant did not brief the issue of the Motion for New Trial; therefore, we consider it abandoned. This assignment does not have merit.

ASSIGNMENT NO. 6
The defendant argues that the trial court erred in failing to give the jury a special jury charge on legal presumptions that states "that evidence under the control of a party and not produced by him was not produced because it would not have aided him" pursuant to La. R.S. 15:432. The State responds that the trial court's general charges regarding legal presumption are a proper recitation of La. R.S. 15:432 and there was no need for a special instruction. The State further responds that the proposed jury instruction is not "wholly correct and pertinent" because the items not produced were not in the control of the State and the trial court correctly did not adopt the defendant's proposed jury instruction.
Failure to read a special jury charge constitutes reversible error only when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right. State v. Bailey, 97-493 (La.App. 5 Cir. 11/12/97), 703 So.2d 1325, 1330.
La.C.Cr.P. art. 807 provides, in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The requested charge was based on La. R.S. 15:432 which provides in pertinent part:
A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; ... that evidence under the control of a party and not produced by him was not produced because it would not have aided him; ...
Defendant argues that if that charge had been given, the jury would have given greater weight to the fact the State failed to present certain items as evidence; namely, (1) a surveillance tape at K-Mart on August 10, 1997, (2) the Maison Blanche bag in which the defendant placed the shoplifted items on August 10, 1997, (3) a sales receipt allegedly produced by the defendant on August 10, 1997, (4) the statement made to Deputy Brocato by Ms. Berkel.
From a review of the record, it is clear that there was no surveillance video of defendant on August 10, 1997 because the video machine was set up at the cash register and not on the service desk. Ms. Berkel testified that the Maison Blanche bag and the items of clothing were never in the custody of the State because the items placed in the Maison Blanche bag were photographed and the photograph was placed into evidence. Ms. Berkel also testified the sales receipt was in K-Mart's control and the State never assumed control of it because she was too upset to remember to ask Ms. Talabock for it.
In State v. Arnaud, the Louisiana Supreme Court reviewed the same jury charge in a similar situation where the items that were not presented for evidence *130 were not in control of the State. State v. Arnaud, 412 So.2d 1013, 1019-1020 (La. 1982). The Arnaud court found that the legal presumption in defendant's proposed jury instruction was not wholly correct or pertinent because the items were not under the control of the State. Id. The Arnaud court found that "whether these items were produced or not goes to the weight of the evidence." Id. We also find that the lack of production of the items goes to the weight of the evidence in this case.
Defendant also contends that he was entitled to Ms. Berkel's statement to prove that there were inconsistencies between her statement to Deputy Brocato and her prior recorded testimony. The trial court concluded defendant was not entitled to inspect the statement as defendant did not demonstrate how Ms. Berkel's statement to Deputy Brocato was inconsistent with her prior recorded statements. In Brady v. State of Maryland, 373 U.S. 83, 87-90, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963), the U.S. Supreme Court held that upon request of the accused the State must produce evidence which is favorable to the accused and material to guilt or innocence. The U.S. Supreme Court in Giglio v. United States, 405 U.S. 150, 153-154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), after citing Brady, supra, stated "when the `reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." The issue to be resolved is whether Ms. Berkel's statement to Deputy Brocato is evidence affecting her credibility because it allegedly contained inconsistencies with prior recorded statements. Defendant did not demonstrate the manner in which the statement would be inconsistent with Ms. Berkel's prior statements. Therefore, defendant was not entitled to that statement.
We find that the trial court's failure to read defendant's special jury charge is not a reversible error because there is no prejudice to the substantial rights of the defendant or the violation of a constitutional or statutory right. This assignment does not have merit.

ASSIGNMENT NO. 7
The defendant argues that the trial court erred in adjudicating defendant as a habitual offender. Specifically, the defendant contends that the State did not provide sufficient evidence to prove that he was the same person who was convicted of the predicate conviction in case number 77-1713. Defendant specifically argues that there were no fingerprints found on the bill of information or the plea form in the record of case number 77-1713. Defendant also argues that the date on the arrest register and the fingerprint card does not correspond to the date of the offense that was listed on the bill of information in case number 77-1713. Furthermore, the defendant argues that he was not advised of his maximum sentencing exposure for attempted distribution of PCP pursuant to his rights as enumerated in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), before accepting his guilty plea in case number 77-1713. Defendant further argues that he was improperly informed of the maximum sentence exposure for forgery in case number 91-0899.
The State responds that it introduced sufficient evidence to prove that defendant was in fact the individual that was convicted in case number 77-1713. Specifically, the State responds that it introduced the entire record of the proceedings in case number 77-1713. Additionally, the State introduced the fingerprint card and the certified records of the Sheriff's Office for case number 1713. The State responds that the discrepancy between the dates on the arrest register and the fingerprint card is the difference between the date of the arrest and the actual date of the incident. The State further responds that it introduced the entire record for case number *131 91-0899, including the arrest register and fingerprint card. The State notes that La.C.Cr.P. art. 566.1 was not in effect at the time that defendant pled guilty to the two offenses and the trial judge was not obligated to inform defendant of his maximum sentencing exposure.
In the present case, the State filed a multiple offender bill of information alleging that the defendant had three prior convictions. The State claims that defendant had thrice before pled guilty: (1) on January 30, 1978 to attempted distribution of PCP, in violation of La.R.S. 14:27 & 40:968, in case number 77-1713, (2) on November 14, 1988, to issuing worthless checks in the amount of $5,075.00 in violation of La.R.S. 14:71, in case number 86-2435, (3) on July 10, 1991, to six counts of forgery in violation of La.R.S. 14:72 in case number 91-0899.[6] All of the predicate offenses occurred in Jefferson Parish. The defendant denied these allegations. On October 29, 1998, defendant filed an Objection to the Multiple Bill of Information, alleging that the defendant was not informed of his Boykin rights and the State failed to prove the identity of the defendant beyond a reasonable doubt.
Where the prior conviction was obtained pursuant to a plea of guilty, the State must meet the burden of proof outlined by the Louisiana Supreme Court in State v. Shelton, 621 So.2d 769, 779-780 (La.1993). This Court summarized that scheme in State v. Conrad, 94-232 (La. App. 5 Cir. 11/16/94), 646 So.2d 1062, 1063-1064, writ denied, 94-3076 (La.4/7/95), 652 So.2d 1345 as follows:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a "perfect" transcript of the Boykin (FN2) colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an "imperfect" transcript. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary.
The documents submitted by the State demonstrate that defendant did plead guilty and was represented by counsel in case numbers 77-1713, 86-2435, 91-0899. According to Shelton, the burden then shifts to defendant to affirmatively prove an infringement on his rights or a procedural irregularity in the taking of the plea itself. State v. Winfrey, 97-427 (La. App. 5 Cir. 10/28/97), 703 So.2d 63, 80, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
To prove that a defendant is a multiple offender, the State must establish by competent evidence, that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092, 1103 (La.1982); State v. Raymond, 97-81 (La.App. 5 Cir. 5/28/97), 695 So.2d 1039, 1044, appeal after remand, 98-119 (La.App. 5 Cir. 8/25/98), 718 So.2d 1010.
At the multiple offender hearing, the State presented the testimony of Captain Merril Boling to establish the defendant's identity with fingerprint exhibits. Captain *132 Boling was stipulated by the parties as an expert in the analysis and comparison of human latent fingerprints. Captain Boling testified that the defendant's fingerprints were taken in court on December 11, 1998, and matched those fingerprints on the fingerprint card taken when defendant was arrested on July 6, 1977, in case number 77-1713. The fingerprint card was linked to the arrest register of the predicate offense by containing the same name, date, and identifying information. Additionally, the arrest register was linked to the record of the predicate offense by similarity of name, date of offense, type of offense and item number, and the record of the predicate offense contained a waiver of rights form, minute entry and commitment evidencing the plea to attempted distribution of PCP on January 30, 1978.
The defendant further argues that the fingerprint evidence was insufficient to prove identity because the fingerprints were placed on arrest cards rather than on the bill of information. This court has held that testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records is sufficient to prove that the defendant was the person convicted of a prior felony. State v. Joseph, 96-187 (La.App. 5 Cir. 11/14/96), 685 So.2d 237, 247-248, writ granted in part on other grounds, 96-2998 (La.5/9/97), 693 So.2d 782.
Defendant further argues that the date of the offense on the fingerprint card (7-6-77) and the date on the bill of information (7-6-76) are not the same. The State concedes that there was a typo on the fingerprint card. The trial court found that the fingerprint card and the arrest register relate to each other because the original fingerprint card would have attended the arrest register. Since the arrest register was based on a warrant, the trial court continued the proceedings so that the State could obtain and introduce the certified records of the Sheriffs Office which have the same item number as in case number 77-1713 into evidence. These records and the bill of information list November 23, 1976, as the date that the undercover buy occurred. These sheriffs records list July 6, 1977, as the day that defendant was booked. Therefore, the State has carried its burden of proving that the defendant was the same person who pled guilty to attempted distribution of PCP. See State v. Simmons, 95-309 (La.App. 5 Cir. 10/18/95), 663 So.2d 790, 796.
The defendant also argues that he was not properly advised of the maximum sentencing exposure to his plea to attempted distribution of PCP in case number 77-1713 and to his plea of six counts of forgery in case number 91-0899. With respect to the claim that the trial court failed to advise defendant of his maximum possible sentence exposure, we note that Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), does not require such advice. It is not clear what, if any, explanation is owed to a defendant about his maximum penalty exposure, only that an understanding of the exposure is important to a defendant in some cases. State v. Harris, 601 So.2d 775, 777-78 (La.App. 1 Cir.1992). At the time that defendant was sentenced, the maximum sentence for attempted distribution of PCP was not more than 5 years at hard labor and a $7,500 fine. Defendant was sentenced to three years at hard labor. The trial court then suspended the original sentence and sentenced defendant to five years of probation. Defendant also received a first offender's pardon pursuant to La.R.S. 15:572 (E).[7] On July 10, 1991, defendant pled guilty as charged to six counts of forgery and was sentenced to two years for each count with the sentences to be served concurrently. The maximum sentencing exposure for forgery is no more than 10 years at hard labor or not more than $5,000 on each count. Defendant received great benefits from these pleas and did not show any harm from the mistaken information.
Furthermore, La.C.Cr.P. art. 556.1, which statutorily requests a trial judge to *133 advise a defendant of the maximum possible penalty prior to accepting a guilty plea, was not in effect at the time of either of defendant's predicate convictions. The defendant in this case pled guilty to attempted distribution of PCP on January 30, 1978, and six counts of forgery on July 10, 1991. La.C.Cr.P. art. 556.1 became effective August 15, 1997, therefore, neither statutory nor jurisprudence law required that the trial court inform the defendant of his maximum sentencing exposure. We find no merit in defendant's contention that his guilty pleas should be vacated because he was not informed of his maximum sentencing exposure. Accordingly, we find that these guilty pleas were valid and the trial court did not err in adjudicating defendant a fourth felony offender.

ASSIGNMENT NO. 8
Defendant argues that the trial court erred in refusing to allow the defendant a 72 hour delay in sentencing and in denying him the opportunity to produce evidence of mitigation pursuant to State v. Dorthey, 623 So.2d 1276 (La.1993). The State responds that defendant did not include these claims in his motion to reconsider sentence and is precluded from raising them on appeal. Furthermore, the State further responds that the trial court sentenced defendant according to the sentencing guidelines and the sentence is not excessive.
Defendant asserts that the trial judge failed to observe the delay between "conviction as a habitual offender and sentencing as required by La.C.Cr.P. art. 873." However, in State v. Davalie, 313 So.2d 587, 591 (La.1975), the Louisiana Supreme Court stated that an habitual offender enhanced sentence is not a conviction and the delay periods of La.C.Cr.P. art. 873 do not apply. The Court noted that the habitual offender statute "merely provides for an enhanced penalty against the multiple offender for the basic crime for which he has been convicted." Id. The habitual offender statute, La. R.S. 15:529.1, relates only to the enhanced sentencing of defendant, whereas, La.C.Cr.P. art. 873 requires a three day delay between conviction and sentencing.

ASSIGNMENT NO. 9
Defendant also argues that the trial court erred in failing to permit the defendant to introduce mitigating evidence and sentencing the defendant to life imprisonment for theft of goods between $100 and $500. In this case, defendant was sentenced to life imprisonment which is the statutory maximum for four-time felony offenders under La. R.S. 15:529.1. The minimum sentence under La. R.S. 15:529.1 is twenty years. In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672 and State v. Dorthey, 623 So.2d 1276 (La.1993), the Louisiana Supreme Court recognized that the imposition of a mandatory minimum sentence under the Habitual Offender Law may still be considered for constitutional excessiveness. A court may depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut the presumption of the sentence's constitutionality. State v. Johnson, 709 So.2d at 676. It is obvious that the trial court considered the mandatory minimum sentence mandated by the Habitual Offender Law too lenient a sentence for this defendant because she sentenced him to the mandatory maximum sentence of life imprisonment at hard labor. Importantly, since the mandatory minimum sentence was not imposed, we review the defendant's sentence for excessiveness hereinafter. We find that State v. Dorthey, supra, is inapplicable in this case.

ASSIGNMENT NO. 10
Defendant argues that the trial court erred in denying his motion to reconsider *134 sentence and that life imprisonment is an excessive sentence for a conviction of theft of goods between $100 and $500. The State responds that defendant was sentenced only to two years at hard labor for his conviction of theft of goods between $100 and $500. The State further responds that the defendant was convicted to life imprisonment without the benefit of probation or suspension of sentence because he was adjudicated a fourth felony offender.
A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the crime. State v. Bonanno, 384 So.2d 355, 358 (La. 1980); State v. Robertson, 97-1040 (La. App. 4 Cir. 11/19/97), 702 So.2d 1207, 1208. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973, 979. A maximum sentence under the habitual offender law is reserved for the worst offender. State v. Telsee, 425 So.2d 1251, 1253 (La.1983).
The defendant was adjudicated a fourth felony offender. As a fourth felony offender, the defendant faced the following penalty as provided by La.-R.S. 15:529.1(A)(1)(c)(i):
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; (Emphasis added).
The defendant was originally convicted of theft of goods, which, according to La. R.S. 14:67.10(B)(2), is punishable by a maximum of two years imprisonment. However, based on the sentencing provisions in La.R.S. 15:529.1(A)(1)(c)(i), the defendant faced an enhanced sentencing exposure of twenty years to life imprisonment.
It is well settled that a sentence should not be set aside absent manifest abuse of discretion. State v. Anseman, 607 So.2d 665, 674 (La.App. 5 Cir. 1992), writ denied, 613 So.2d 989 (La. 1993). In reviewing claims of an excessive sentence, an appellate court uses a two-step process. First, the record must show adequate consideration of the criteria set forth in La.C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688, 698-699 (La.1983). The trial court is not required to list every aggravating and mitigating circumstance so long as the record reflects adequate consideration of the guidelines of La. C.Cr.P. art. 894.1. State v. Smith, supra; State v. Gene, 587 So.2d 18, 24-25 (La.App. 2 Cir.1991), writ denied, 604 So.2d 993 (La.1992). The articulation of the factual basis for the sentence is the goal of La. C.Cr.P. art. 894.1. Remand is unnecessary when a sufficient factual basis for the sentence is shown in the record. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
Recent jurisprudence supports the imposition of the maximum sentence under this statute where the defendant's criminal record is extensive. State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311, 318; State v. Conners, 577 So.2d 273, 274 (La.App. 3 Cir.1991). The records reflects that the trial court was aware of the nature of the crime for which defendant was convicted and was aware of the fact that defendant was a career criminal with a total of thirty-three felony convictions and *135 seventy-seven felony arrests. For procedural reasons, those convictions could not be used to enhance defendant's sentence through a multiple offender proceeding. The judge nevertheless felt that defendant's extensive criminal record was a basis for imposing the maximum sentence allowed under the statute. Considering the foregoing, the trial court did not abuse its wide discretion in sentencing defendant to the maximum term. Therefore, we find that the sentence is not excessive based on the facts presented in this case.

ERRORS PATENT DISCUSSION
The record in this case was reviewed for errors patent in accordance with La.C.Cr. P. art. 920 and State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weitland, 556 So.2d 175 (La.App. 5 Cir.1990). There were no errors patent.
For the foregoing reasons, we affirm the conviction and the sentence.
AFFIRMED.
NOTES
[1] State v. Prieur, 277 So.2d 126 (La.1973).
[2] The police report stated that the merchandise was valued at $140.66.
[3] EAS stands for electronical article surveillance. An EAS tag is an alarm tag.
[4] The third and fourth motions relate to the same statements.
[5] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), reh denied, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967).
[6] Defendant did not challenge the predicate offense in Case Number 86-2435.
[7] La.R.S. 15:572(E) states that notwithstanding any provision herein contained to the contrary, any person receiving a pardon under the provisions of Subparagraph (1) of Paragraph (E) of Section 5 of Article IV of the Louisiana Constitution of 1974 and this Section may be charged and punished as a second or multiple offender as provided in La. R.S. 15:529.1.